UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FRANKLIN GLASER, et al., | Case No. 16-cv-07245-LB |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART THE DEFENDANTS' MOTION TO DISMISS** |
| NATIONSTAR MORTGAGE, LLC, et al., | Re: ECF Nos. 40, 43, 63 |
| Defendants. | |

## INTRODUCTION

The plaintiffs and borrowers, Franklin and Victoria Glaser, brought this mortgage-related case after their home was sold in foreclosure.[1] They assert ten claims for relief against Nationstar Mortgage (the loan servicer), Mortgage Electronic Registration Systems (the original mortgage-trust beneficiary), U.S. Bank (the trustee), NBS Default Services (the foreclosing trustee), and Viet Nguyen (the third-party homebuyer).[2] The defendants move to dismiss the Glasers' First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).[3]

---

[1] *See generally* First Amended Compl. ("FAC") – ECF No. 37. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See generally id.*

[3] *See* Motion to Dismiss – ECF No. 40; NBS Joinder – ECF No. 43; Nguyen Joinder – ECF No. 63.

The court can decide the matter without oral argument and vacates the May 18, 2017 hearing. Civil L.R. 7-1(b). The court grants in part the defendants' motion and dismisses many of the Glasers' claims. The court does, however, grant them leave to amend.

**STATEMENT**

**1. The Glasers Take Out a $560,000 Loan**

In December 2004, Franklin and Victoria Glaser got a $560,000 loan from America's Wholesale Lender.[4] The loan was secured by a deed of trust on the Glasers' property in San Ramon, California.[5] The deed of trust named as trustee CTC Real Estate Services and named as beneficiary (as nominee for America's Wholesale) Mortgage Electronic Registration Systems ("MERS"). [6]

On January 11, 2011, MERS recorded an assignment of the deed of trust that transferred its interest to U.S. Bank as trustee for the Harborview 2005-1 Trust Fund.[7] Ten months later, MERS recorded a second assignment of the deed of trust, again to U.S. Bank as trustee for the Harborview trust.[8] And nearly two years after the second assignment, Bank of America recorded an assignment of the deed of trust to Nationstar.[9] (The Glasers allege "that there is no evidence of [a] transfer to [Bank of America] recorded in the public record."[10])

Several years later, in April 2016, NBS Default Services was substituted as trustee for U.S. Bank.[11]

---

[4] FAC ¶ 11, Ex. A.

[5] FAC ¶ 11, Ex. A.

[6] FAC ¶ 12, Ex. A.

[7] FAC ¶ 13, Ex. B.

[8] FAC ¶ 14, Ex. D.

[9] FAC ¶ 15, Ex. E.

[10] FAC ¶ 15.

[11] *Id.* ¶ 20, Ex. H.

## 2. The Glasers Attempt to Modify Their Loan and NBS Records a Notice of Default

The Glasers' mortgage was affordable, but Mr. Glaser had a stroke in March 2013 and "they found themselves behind in payments."[12] So in 2014 the Glasers began loan-modification efforts with Nationstar.[13] That year they submitted a loan-modification application that was denied because their "documents were not provided in writing."[14] But they submitted a complete application, qualified for a three-month modification trial period, and then converted to a permanent modification.[15] The Glasers made three payments during the trial period and another six payments after the modification became permanent.[16] But the modification was not recorded and "Nationstar did not follow through with . . . [its] promise to permanently modify [the loan] in writing."[17]

In January 2016, a month after Mr. Glaser retired, the Glasers "submitted another complete" loan-modification application because of the change in their income.[18] Nationstar acknowledged receipt of the application the next month.[19] Nationstar denied the Glasers' application because (according to it and disputed by the Glasers) the application was ineligible under the Home Affordable Modification Program and the Glasers had a negative disposable income.[20] In its denial letter, Nationstar appointed Silvia Ochoa-Araujo as the Glasers' single point of contact — the Glasers allege that this appointment was too late, that Ms. Ochoa-Araujo was never available, and that they never spoke to her.[21]

---

[12] FAC ¶ 16.

[13] *See id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* ¶¶ 16–17.

[19] *Id.* ¶ 17, Ex. F.

[20] FAC ¶ 18, Ex. G.

[21] FAC ¶ 18, Ex. G.

The Glasers disputed Nationstar's denial of their application "on the grounds that Mr. Glaser had retired in December 2015 and . . . he had started receiving Public Employee Retirement System payments."[22] On Nationstar's advice, they submitted a new application (instead of appealing the denial) based on their changed financial circumstances.[23] They submitted the new application before April 18, 2016, when NBS recorded a Notice of Default and Election to Sell.[24]

The Notice of Default "instruct[ed] [the Glasers] to contact Nationstar for foreclosure avoidance options" and "stated an amount in arrearage of $33,723.02."[25] The Glasers assert that this amount is inaccurate because Nationstar "refused partial payments which should have been credited toward their loan."[26]

### 3. The Glasers Dispute Nationstar's Denial of Their Loan-Modification Applications

After NBS recorded the Notice of Default, in June 2016, Nationstar denied the Glasers' second loan-modification application because of a negative net present value ("NPV").[27] Nationstar twice advised the Glasers that they could dispute the decision by providing "written evidence that one or more of the NPV input values [was] inaccurate."[28] Nationstar also advised the Glasers about "the proper process for appealing the property value," which included (among other things) (1) the Glasers' alleged value of the home, along with documents to support that amount, and (2) if the NPV was found to be positive, a third-party appraisal.[29] The Glasers disputed Nationstar's NPV calculation but they did not "provide a payment for another appraisal or[,] in the alternative, their own appraisal report."[30]

---

[22] FAC ¶ 19.

[23] *Id.*

[24] *Id.*, Ex. I.

[25] FAC ¶ 21, Ex. I.

[26] FAC ¶ 21, Ex. J.

[27] FAC ¶¶ 19, 22, Ex. K.

[28] FAC ¶¶ 22–23, Exs. K, L.

[29] FAC, Ex. L.

[30] FAC ¶¶ 22–24.

They also appealed Nationstar's calculation of their income.[31] Nationstar had calculated the Glasers' monthly gross income to be $5,496.79.[32] This included (1) $2,423.05 in Mr. Glaser's retirement income; (2) $2,623.74 in Mrs. Glaser's average wages;[33] and (3) $450 in property rental income.[34] The Glasers assert that the income calculation was inaccurate because it did not include Mr. Glaser's $868 monthly insurance payment.[35] They also appear to allege that Nationstar failed to account for Mrs. Glaser's increased monthly salary.[36]

On September 10, 2016, in addition to appealing Nationstar's decision, the Glasers "submitted another written application."[37] The Glasers allege that this September application included the $868 monthly insurance payments, but that income is not separately delineated in the application.[38] Instead, the application reflected $5,344.14 in monthly gross wages, $2,423.05 in retirement income, and $600 in rental income for a total gross income of $8,367.19.[39] Nationstar did not acknowledge receipt of the application.[40]

### 4. NBS Records a Notice of Trustee's Sale; the Glasers Continue to Talk with Nationstar

Two days after the Glasers submitted the September 2016 modification application, NBS recorded a Notice of Trustee's Sale.[41] The Glasers "were in regular contact with Nationstar," though, "and were told their application including the $868 per month [insurance] income was

---

[31] *Id.* ¶¶ 22–23.

[32] *Id.*, Ex. K.

[33] Mrs. Glaser provided to Nationstar monthly paystubs reflecting $2,471.69 and $2,775.81. Nationstar averaged the two to get $2,623.74 in monthly wages. (FAC, Ex. L.)

[34] The Glasers received $600 per month in rental income on their San Ramon property, but Nationstar discounted that amount by 25% according to HAMP guidelines. (FAC, Ex. L.)

[35] FAC ¶¶ 22–24, Ex. M.

[36] FAC ¶¶ 22–24, Ex. N.

[37] FAC ¶ 24, Ex. O.

[38] FAC ¶ 24, Ex. O.

[39] FAC ¶ 24, Ex. O.

[40] FAC ¶ 24.

[41] *Id.* ¶ 25, Ex. P.

1    under consideration and" the sale was stayed.[42] The Glasers "relied on this representation" and did

2    not seek bankruptcy or other emergency court protection.[43] They instead wrote a letter to

3    Nationstar again explaining the $868 monthly insurance income.[44]

4         A week after the Glasers wrote to Nationstar, on October 11, 2016, NBS conducted the

5    trustee's sale.[45] U.S. Bank (as trustee for the Harborview Trust) bought the property and later

6    "attempted to transfer its interest to Viet Nguyen."[46] U.S. Bank recorded a grant deed conveying

7    the property to Ms. Nguyen.[47]

8         The Glasers challenge the trustee's sale (and the eventual transfer to Ms. Nguyen) because it

9    "was initiated and conducted by parties with no lawful interest in" their deed of trust.[48] They assert

10   that chain of title in the deed of trust was broken when the lender "fail[ed] to transfer assets to the

11   trust prior to the trust closing date" in violation of the trust's Pooling and Servicing Agreement

12   ("PSA").[49] They also assert that the chain of title was broken by the three recorded assignments

13   (the first two from MERS to U.S. Bank and the third from Bank of America to Nationstar) and

14   Bank of America's purchase of Countrywide.[50]

15        The Glasers therefore brought this case to challenge the foreclosure and assert ten claims for

16   relief: (1) wrongful foreclosure; (2) promissory estoppel; (3) violation of California Civil Code

17   section 2924.11; (4) violation of California Civil code section 2923.7; (5) violation of California

18   Civil Code section 2923.55; (6) slander of title; (7) violation of the Racketeer Influenced and

19   Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (8) violation of the Fair Debt Collection

---

[42] FAC ¶ 25.

[43] *Id.* ¶ 25.

[44] *Id.* ¶ 26, Ex. Q.

[45] FAC ¶ 27.

[46] *Id.* ¶ 27, Ex. R.

[47] Request for Judicial Notice – ECF No. 41, Ex. A. The court judicially notices the grant deed (but not the truth of its contents) as a matter of the public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

[48] FAC ¶ 29.

[49] FAC ¶ 29.

[50] *Id.* ¶¶ 30–31.

1  Practices Act ("FDCPA"), 15 U.S.C. § 1692; (9) violation of the Truth in Lending Act ("TILA"),

2  15 U.S.C. § 1601; and (10) violation of the Real Estate Settlement Practices Act ("RESPA"), 12

3  U.S.C. § 2605.

4      MERS, U.S. Bank, and Nationstar move to dismiss the complaint under Federal Rule of Civil

5  Procedure 12(b)(6).[51] NBS and Ms. Nguyen joined in the motion.[52]

6

7                          **RULE 12(B)(6) LEGAL STANDARD**

8      Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a

9  "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may

10 be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under

11 a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

12 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

13     A complaint must contain a "short and plain statement of the claim showing that the pleader is

14 entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

15 which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

16 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to

17 provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

18 formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

19 enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555

20 (internal citations omitted).

21     To survive a motion to dismiss, a complaint must contain sufficient factual allegations,

22 accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

23 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

24 the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

25 defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a

26

27 [51] Motion to Dismiss – ECF No. 40.

28 [52] NBS Joinder – ECF No. 43; Nguyen Joinder – ECF No. 63.

United States District Court
Northern District of California

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Wrongful Foreclosure

The Glasers assert a wrongful-foreclosure claim against all defendants.[53] They allege that "[t]he foreclosure proceedings [that] Defendants Nationstar and NBS initiated . . . were invalid and wrongful because no Defendant was the true holder of beneficial interest under" the deed of trust.[54] Thus, they say, the trustee's sale was illegal.[55]

Under California law, "[t]he elements of an equitable cause of action to set aside a foreclosure sale are as follows: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011). "Justifications for setting aside a trustee's sale . . . which satisfy the first element, include the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale." *Id.* "Other grounds include proof that: (1) the trustee did not have the power to foreclose, (2) the trustor was not in

---

[53] FAC ¶¶ 36–51.

[54] *Id.* ¶ 37.

[55] *Id.*

default, no breach had occurred, or the lender had waived the breach, or (3) the deed of trust was void." *Id.* at 104–05 (citations omitted).

Here, the Glasers "allege a wrongful foreclosure due to [a] broken chain of title and on equitable principles" based on the defendants' alleged misconduct.[56] They base their chain-of-title theory on multiple grounds, including the defendants' use of robo-signers, "a late assignment and faulty securitization," foreign and duplicate assignments, dual-tracking and single-point-of-contact violations, and others.[57] Their principal theory, though — and the only one they substantively address in their opposition — is that the original assignment to U.S. Bank "was recorded late . . . in violation of the" securitization trust's PSA, thus voiding that (and all subsequent) assignments.[58] The issue is whether they have standing to challenge that alleged breach of the PSA.

"A borrower [has] . . . standing to challenge an assignment of her note and deed of trust on the basis of defects allegedly rendering the assignment *void*." *Morgan v. Aurora Loan Servs., LLC*, 646 F. App'x 546, 550 (9th Cir. 2016) (citing *Yvanova v. New Century Motrg. Corp.*, 62 Cal. 4th 919 (2016)) (emphasis added). "Borrowers who challenge the foreclosing party's authority on the grounds of a void assignment 'are not attempting to enforce the terms of the instruments of assignment; to the contrary, they urge that the assignments are void ab initio." *Yvanova*, 62 Cal. 4th at 936 (quoting *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013)). But "[w]hen an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so." *Id.* And so borrowers do not have standing to challenge an assignment as *voidable, see id.* 942–43; for example, based on an act in violation of a trust agreement governed by New York law. *See Morgan*, 646 F. App'x at 550 (holding that "because

---

[56] *Id.* ¶ 38.

[57] *Id.*

[58] *See Id.* ¶¶ 38–43.

1   an act in violation of a trust agreement is voidable — not void — under New York law, which

2   governs the . . . [PSA] at issue, [the plaintiff] lack[ed] standing").

3       Here, the Glasers' deed of trust is governed by New York law.[59] They allege that the PSA

4   required the deed of trust be transferred in 2004 or 2005 (before the trust's closing date), but that

5   MERS did not assign its interest to U.S. Bank until 2011.[60] They assert that this "attempted

6   transfer of the Deed of Trust into the securitized trust rendered the attempted transfer void and not

7   merely voidable."[61] But "an assignment to a securitized trust that is made after the closing date is

8   'merely voidable,'" not void, under New York law. *Reed v. Wilmington Trust, N.A.*, No. 16-cv-

9   01933-JSW, 2016 WL 3124611, at *4 (N.D. Cal. June 3, 2016) (citing *Saterbak v. JPMorgan

10  Chase Bank, N.A.*, 245 Cal. App. 4th 808, 815 (2016)) ; *Zeppeiro v. GMAC Mortg., LLC*, 662 F.

11  App'x 500, 501 (9th Cir. 2016) ("[A]n untimely assignment into a securitized trust is not void, but

12  merely voidable, and . . . borrowers lack standing to challenge such assignments."). Because the

13  allegedly improper assignment of the deed of trust is merely voidable, then, the Glasers lack

14  standing to "challenge such alleged deficiencies in a wrongful foreclosure action." *Suruki v.

15  Ocwen Loan Serv., LLC*, No. 15-cv-00773-JST, 2016 WL 7741734, at *3 (N.D. Cal. July 22,

16  2014).

17

18                                   *       *       *

19      As mentioned above, the Glasers appear to assert several other reasons why the assignment is

20  void instead of voidable— for example, "violations of the California Civil Code and federal law,

21  and use of robo-signers."[62] For three reasons, the court does not address these general assertions

22  now: (1) the Glasers do not provide legal support for their argument; (2) the court dismisses below

23  many of their claims for California and federal violations; and (3) the one specific (alleged)

24  violation that they identify — the use of robo-signers — renders the assignment voidable, not

25  _____

26  [59] *Id.* ¶ 41.

    [60] *Id.* ¶¶ 39, 41.

27  [61] *Id.* ¶ 41.

28  [62] Opposition at 15.

void. *See Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 820 (2016) ("To the extent that an assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option. The bank, not the borrower[,] would be the injured party.") (citing *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1109 (N.D. Cal. 2014)).

The court dismisses the Glasers' wrongful-foreclosure claim but grants them leave to amend.

## 2. Promissory Estoppel Claim

The Glasers assert a claim for promissory estoppel.[63]

Under California law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires." *See id.* Where equity requires, promissory estoppel is invoked "to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Id.* The elements of promissory estoppel are: (1) a clear promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; (3) injury (meaning, substantial detriment); and (4) damages "'measured by the extent of the obligation assumed and not performed.'" *See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010) (quoting *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007)).

Here, the Glasers base their promissory-estoppel claim on two promises.

First, they allege that "Nationstar and/or NBS on behalf of themselves or as agents or robosigners of one or more other Defendants made a promise through oral and written representations[] that they would not foreclose" on the property while the Glasers' modification application was being considered.[64] This is not a "clear promise" because it is not clear who made

---

[63] FAC ¶¶ 52–59.

[64] *Id.* ¶ 53.

United States District Court
Northern District of California

it (Nationstar or NBS) and, under Rule 8(a)'s pleading requirements, grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief.

Second, they assert that Nationstar "promise[d] to convert [their] trial period plan to permanent in 2014 which never occurred."[65] The problem with this promise, however, is that the Glasers also allege that "they were told their trial plan had converted to permanent."[66] These two allegations are contradictory in that it appears Nationstar actually converted the Glasers' trial plan to a permanent modification, satisfying its promise. The Glasers also assert that that Nationstar did not "follow through with" the promise to permanently modify the loan "in writing." But it is unclear if it is the promise to modify the loan *in writing* on which they allegedly relied, and, if so, how they detrimentally relied on it.

The court therefore dismisses the promissory-estoppel claim without prejudice.

### 3. Violation of California Civil Code Section 2924.11

The Glasers assert that the defendants violated California's Homeowner Bill of Rights ("HBOR") by continuing with the foreclosure proceedings "without providing a determination on the loan modification applications or acknowledging Mr. Glaser's additional income."[67] They assert this dual-tracking claim under section 2924.11, which describes requirements (and prohibitions) after a loan modification has been approved. But based on the Glasers' allegations — that the defendants proceeded without making a determination on their modification applications — the defendants construe this claim under section 2923.6.[68] The court considers the claim under that section, too. (The Glasers did not address the issue — or the claim at all — in their opposition brief.)

---

[65] *Id.* ¶ 54.

[66] *Id.* ¶ 16.

[67] *See id.* ¶¶ 64–66.

[68] *See* Motion to Dismiss at 16–18.

"Dual tracking" is the practice of pursuing foreclosure proceedings while a borrower's loan modification application is still pending. *See Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 904 (2013). Under section 2923.6(c), if a borrower submits a complete loan modification application, the mortgage servicer must first make a written determination that the borrower is not eligible for a loan modification before recording a notice of default or conducting a trustee's sale. A servicer, trustee, beneficiary, or other authorized agent may not "record a notice of default or notice of sale or conduct a trustee's sale" until one of the following occurs:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code § 2923.6(c). A modification application is "'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." *Id.* § 2923.6(h). "In order to minimize the risk of borrowers submitting multiple applications . . . for the purpose of delay," a servicer is not required to evaluate a borrower's application that it has already reviewed "unless there has been a material change in the borrower's financial circumstances . . . and that change is documented by the borrower and submitted" to the servicer. *Id.* § 2923.6(g).

Here, the Glasers allege that they submitted a complete loan-modification application in January 2016.[69] Nationstar denied that application on February 27, 2016.[70] Nationstar denied the application because it was ineligible under the Home Affordable Modification Program and the Glasers had a negative disposable income.[71] The Glasers disputed the denial within thirty days.[72] "Nationstar advised [them] to submit another application based upon changed financial

_____

[69] FAC ¶¶ 17, 62.

[70] *Id.* ¶ 18, Ex. G.

[71] FAC ¶ 18, Ex. G.

[72] FAC ¶ 19.

circumstances, which they did."[73] They allege that they submitted that application before the Notice of Default was recorded on April 18, 2016.[74] They also assert that it was not until *after* the Notice of Default was recorded, in June 2016, that Nationstar denied their second application.[75]

That may qualify as a violation of California's dual-tracking prohibition, but the Glasers plead themselves out of it: later in the complaint (under their dual-tracking claim), they assert that they submitted loan-modification applications in January 2016 (the original application), September 2016, and October 2016.[76] They skip over the above second application submitted sometime between February 27 and April 18. Because the pleading is contradictory and ambiguous, and because it does not give sufficient notice to the defendants, that application does not support a dual-tracking violation.

And neither do the Glasers' other applications, allegedly submitted on September 10 and October 4, 2016, because those applications were not "complete."[77] In both of those applications, the Glasers asserted that Nationstar improperly calculated their income because it excluded Mr. Glaser's $868 monthly insurance payment.[78] But they do not allege that they submitted *complete* applications. For example, the September application (a standard Request for Mortgage Assistance) requires applicants to "[p]rovide documentation showing the amount and frequency of the benefits, such as letters, exhibits, disability policy or benefits statement from the provider and receipt of payment (such as two most recent bank statements or deposit advices)."[79] The Glasers attach to the complaint a check from San Mateo County Schools for the $868.[80] But that check does not indicate the frequency of the payment, and the Glasers do not clearly assert that they

---

[73] *Id.*

[74] *Id.*

[75] *Id.* ¶¶ 19, 22, Ex. K.

[76] FAC ¶ 62.

[77] *Id.*

[78] *Id.* ¶¶ 24, 26.

[79] FAC, Ex. O at 3.

[80] FAC, Ex. M.

submitted it to Nationstar — the September application does not indicate the $868 payment and the check is not attached to it.[81]

In the September application, the Glasers also "disputed the [property's] valuation."[82] In Nationstar's August letter to the Glasers, it explained "[t]he proper process for appealing the property value," which required the Glasers to "state the alleged value of the home, and provide documents to support this amount, such as a tax appraisal or Zillow report."[83] But the Glasers "did not provide a payment for another appraisal or[,] in the alternative, their own appraisal report."[84] And so they did not supply the required documentation to complete their application challenging the property's value.

They also appear to have challenged Nationstar's calculation of Mrs. Glaser's monthly income.[85] They assert that her wages "increased from the $2,775 gross monthly pay which was listed in their January 2016 application,"[86] but they do not specify the amount of the increase or allege that they provided the documentation to support it. They instead attach a paystub to the complaint for the original $2,775.81 monthly wages, which Nationstar had already considered.[87]

Although the Glasers allege that Nationstar did not respond to their September and October applications before the Notice of Trustee's Sale was filed and before the property was sold, their applications were not "complete," and so, as pled, their dual-tracking claim fails. The court dismisses it without prejudice.

---

[81] *See* FAC, Ex. O.

[82] FAC ¶ 24.

[83] FAC, Ex. L at 1.

[84] FAC ¶ 24.

[85] *Id.* ¶ 23.

[86] *Id.*

[87] FAC, Exs. L, N.

### 4. Violation of California Civil Code Section 2923.7

The Glasers assert a second HBOR claim under section 2923.7.[88] This claim is based on the defendants' failure to appoint a single point of contact before the denial of their initial modification application, and their point of contact's failure to communicate with them.[89]

Section 2923.7 provides that, when a borrower requests a foreclosure-prevention alternative, such as a loan modification, the servicer must promptly designate a "single point of contact" ("SPOC") to communicate directly with the borrower. Cal. Civ. Code § 2923.7(a). The SPOC can be an individual or a team, but must (among other things) possess sufficient knowledge about foreclosure alternatives and have access to individuals who have the ability and authority to stop foreclosure proceedings. *See id.* § 2923.7(b)–(d). Moreover, "[t]he mortgage servicer shall ensure that each member of the [SPOC] team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." *Id.* § 2923.7(e).

As an initial matter, the court dismisses the claim with prejudice against all defendants except Nationstar (the loan servicer), because section 2923.7 applies only to servicers. *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1152 (N.D. Cal. 2013) (finding that section 2923.7 "imposes duties only on the loan servicer").

With respect to Nationstar, it appointed a single point of contact (Ms. Ochoa-Araujo), when it denied the Glasers' 2016 loan-modification application.[90] The Glasers allege that this appointment was "too late" and that Ms. Ochoa-Araujo was "never available."[91]

Section 2923.7 requires a loan servicer to appoint a SPOC upon the borrower's request for a foreclosure prevention alternative. *See Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 874 (N.D. Cal. 2015) (collecting cases). The Glasers assert that they first began loan-modification efforts in 2014, when they submitted their first modification application.[92] They also allege that Nationstar

---

[88] FAC ¶¶ 70–75.

[89] *Id.* ¶ 73.

[90] *See Id.* ¶¶ 18, 73, Ex. G.

[91] FAC ¶ 18.

[92] *Id.* ¶ 16.

did not appoint Ms. Ochoa-Araujo until February 2016, when it denied their January 2016 modification application.[93] So, as pled, the Glasers requested a foreclosure prevention alternative (*i.e.* a loan modification) in 2014, but Nationstar did not appoint a single point of contact until February 2016.

For now, the claim survives against Nationstar. On this record, the court defers ruling on its defenses under sections 2924.12(c) and 2923.4(a).

### 5. Violation of California Civil Code Section 2923.55

The Glasers' final HBOR claim arises under section 2923.55.[94] In that claim, they challenge the defendants' rights under the deed of trust (based on improper assignments) and seek a declaration determining the parties' rights with respect to the property, the note, and the deed of trust.[95] They urge that "Nationstar cannot comply with" section 2923.55 "which requires that any beneficiary causing the recordation of a Notice of Default . . . prove first that they are the Noteholder."[96]

The claim as pled is poorly constructed. The Glasers do not identify where section 2923.55 requires a beneficiary to prove that it is the noteholder. The defendants point to section 2924(a)(6), which states that "[n]o entity shall record or cause a notice of default to be recorded . . . unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest." Cal. Civ. Code § 2924(a)(6). Here, NBS — which U.S. Bank substituted as trustee — recorded the Notice of Default. And to the extent this is a challenge to U.S. Bank's interest in the deed of trust (and the defendants' chain of title), the court denies that argument for the same reasons as discussed above: the Glasers do not have standing to challenge the loan's securitization based on the alleged breach of the PSA. The court dismisses the claim without prejudice.

---

[93] *Id.* ¶¶ 17–18.

[94] *Id.* ¶¶ 76–87.

[95] *Id.*

[96] *Id.* ¶ 83.

**6. Slander of Title**

The Glasers allege a slander-of-title claim based on the defendants' recording of the assignments and other notices.

Slander of title "occurs when a person, without privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss." *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 84 (1997). The required elements of a claim for slander of title are "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012).

A "privileged" publication is one made "[i]n a communication, without malice, to a person interested therein [ ] by one who is also interested." Cal. Civ. Code § 47(c)(1). Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ. Code § 2924(d); *see also Ogilvie v. Select Portfolio Serv'g*, No. 12–CV–001654–DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012) (collecting cases). Malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008).

Here, the Glasers' theory is that the defendants "disparaged [their] title to the Subject Property when, based on [the] invalid and void assignment[s], they recorded" the assignments, substitution of trustee, notice of default, and notice of trustee's sale, with "knowledge of [the documents'] falsity."[97] The claim fails for two reasons. First, as discussed above, they do not have standing to challenge the assignments based on improper securitization under the PSA, and thus cannot say that the assignments or the subsequent documents are "invalid" or "false." Second, at least the notice of default and sale are privileged as non-judicial foreclosure documents, *see* Cal. Civ. Code § 2924(a)(1) & (3), (d)(1); and the Glasers do not plead facts plausibly demonstrating malice.

---

[97] *Id.* ¶¶ 89–90, 93, 95.

The Glasers also indicate, in passing only, that the recorded documents contained "a false amount in default."[98] For example, the Notice of Default reflected an amount in default of $33,723.02.[99] They assert that "this amount is inaccurate on the grounds that Nationstar refused partial payments which should have been credited toward their loan on or around December of 2015."[100] According to a letter written by Mr. Glaser, Nationstar refused to accept a partial payment ($1,500) when the Glasers could not afford the full mortgage payment ($3,260).[101] But the deed of trust expressly authorizes this: "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."[102] So, Nationstar's refusal to accept a partial payment (which it is authorized to do) cannot alone render the amount in default "false."

The court dismisses the Glasers' slander-of-title claim without prejudice.

## 7. RICO Claim

The Glasers next assert a RICO claim against the defendants.

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). It is similarly unlawful for "any person to conspire" to do so. *Id.* § 1962(d). A private plaintiff "injured in his business or property" may sue for violations of § 1962 and "shall recover threefold the damages he sustains" plus costs and fees. *Id.* § 1964(c).

To state a successful RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering (known as 'predicate acts') (5) causing injury to the

---

[98] *Id.* ¶ 95.

[99] FAC ¶ 21, Ex. I.

[100] FAC ¶ 21, Ex. J.

[101] FAC, Ex. J.

[102] FAC, Ex. A at 4 (Deed of Trust, § 1).

plaintiff's 'business or property.'" *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

The "enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 549. "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Id.* And "'the person named as the defendant cannot also be the entity identified as the enterprise.'" *Madlaing v. JPMorgan Chase Bank, N.A.*, No. CV F 12-2069 LJO SMS, 2013 WL 2403379, at *21 (E.D. Cal. May 31, 2013) (quoting *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir. 1989)).

"To show a pattern of racketeering activity, the plaintiff must allege more than the existence of one scheme with a 'single purpose which happen[s] to involve more than one act taken to achieve that purpose.'" *Lee v. Bank of New York Mellon*, No. 16-cv-05094-JST, 2016 WL 8729924, at *8 (N.D. Cal. Dec. 9, 2016) (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)) (alteration in original). "The plaintiff also must show that the activities 'amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *Sever*, 978 F.2d at 1534).

"An 'injury' is cognizable under RICO only if the plaintiff can show that injury was proximately caused by the conduct, and that he has suffered a concrete financial loss." *Bergman v. Bank of America*, No. C-13-00741 JCS, 2013 WL 5863057, at *29 (N.D. Cal. Oct. 23, 2013) (citing *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002)).

When a civil RICO claim is based in fraud, Rule 9(b)'s heightened pleading standard applies. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). So, a plaintiff alleging fraudulent predicate acts must "'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Id.* at 1066 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

In *Bergman v. Bank of America*, the plaintiff-borrowers alleged that the defendant-lenders engaged in a "scheme to defraud everyone." 2013 WL 5863057 at *29. The *Bergman* court summarized the alleged scheme:

> Plaintiffs allege that Defendants concealed the securitization of Plaintiff's loans, "br[ought] suit on behalf of entities that were not the real parties in interest,"

"conceal[ed] the parties' lack of standing," "draft[ed] . . . fraudulent affidavits and documents," including documents executed by robo-signers, and conveyed foreclosure-related documents using the U.S. Mail and the internet. Plaintiffs allege that Defendants carried out these acts as part of "a scheme to defraud everyone."

*Id.* (citations omitted). Noting that "several other courts in this district have recently dismissed with prejudice RICO claims" based on nearly identical theories, the court found the plaintiffs' claim to be "far from plausible." *Id.* (quoting *Zacharias v. JPMorgan Chase Bank, N.A.*, No. 12-06525 SC, 2013 WL 588757, at *3 (N.D. Cal. Feb. 13, 2013)). The court reasoned:

> Plaintiffs "put forward no facts supporting [their] 'sweeping contention that Defendants defrauded everyone' by bringing suit on behalf of entities without standing to sue." They fail to allege facts of an ongoing organization to support the contention that Defendants function as an "enterprise." They fail to plausibly allege racketeering activities that are distinct from the alleged enterprise. They fail to allege that the loan constitutes an unlawful debt, i.e., an unlawful gambling debt. They fail to identify authority to support their contention that Defendants had a duty to make disclosures regarding securitization. Moreover, securitization is neither a crime nor racketeering activity.

*Id.* at *30 (citations omitted). The court concluded that the "'Plaintiff's attempt to cast a straightforward foreclosure proceeding as a pattern of racketeering activity is simply improper'" and dismissed the claim with prejudice. *Id.* (quoting *Zacharias*, 2013 WL 588757 at *3).

Here, as in *Bergman*, the Glasers allege that the defendants "participated in a scheme to defraud everyone" and, in doing so, attempt to convert the straightforward foreclosure proceedings into a pattern of racketeering activity.[103] The Glasers allege that the defendants "concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements."[104] "By concealing the securitization," the Glasers say, the defendants "concealed the fact that [their] loan changed character," a change that "had a materially negative effect on [them]."[105] They allege that the "'predicate acts' of fraud, which were accomplished through the U.S. Mail[] and the internet," included "[b]ringing suit on behalf of entities which were not the real parties in interest," "[a]ctively concealing the parties' lack of standing," and "drafting of . . . fraudulent affidavits and documents and the subsequent execution of the documents by robo-signers."[106] The Glasers'

---

[103] FAC ¶ 105.

[104] *Id.* ¶ 100.

[105] *Id.*

[106] *Id.* ¶ 101. The Glasers also appear to cross-reference complaints and other documents from out-of-

remaining RICO allegations assert — in conclusory fashion — the defendants' (without distinguishing among them) misrepresentations; their malice, oppression, and fraud; their conspiracy and use of the mail and internet; the conspirators' intent "to maintain an absolute stranglehold on the American economy for many decades, if not centuries, into the future"; the RICO "enterprise"; and the Glasers' reasonable and detrimental reliance.[107]

These allegations do not satisfy Rule 9(b)'s heightened pleading standard and assert a RICO claim that is "far from plausible." *See Bergman*, 2013 WL 5863057 at \*29–\*30. The court therefore dismisses the Glasers' RICO claim with prejudice.

## 8. FDCPA Claim

The Glasers assert an FDCPA claim against all of the defendants.[108]

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (alteration in original). The elements of a FDCPA claim are as follows: "(1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Ellis v. Phillips & Cohen Associates, Ltd.*, No. 5:14-cv-05539-EJD, 2016 WL 3566981, at \*3 (N.D. Cal. June 30, 2016) (quoting *Dang v. CitiMortgage, Inc.*, No. 5:11-cv-05036 EJD, 2012 WL 762329, at \*3 (N.D. Cal. Mar. 7, 2012)). The issue here is whether the defendants were "debt collectors" attempting to collect a debt within the meaning of the FDCPA.

A "debt collector" includes a person who: (1) uses interstate commerce or the mail in a business the principal purpose of which is debt collection; (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"; or (3) is

---

district cases to add to the predicate acts. (FAC ¶¶ 102–04.)

[107] *See id.* ¶¶ 106–33.

[108] *Id.* ¶¶ 134–44.

"any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). "The FDCPA specifically excludes creditors collecting their own consumer debts. . . . Mortgage loan beneficiaries and servicing companies are not 'debt collectors' under the FDCPA." *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1053 (C.D. Cal. 2012) (quoting *Derakhshan v. Mortg. Elec. Registration Sys., Inc.*, No. SACV08-1185 AG (RNBx), 2009 WL 3346780, at *7 (C.D. Cal. Oct. 13, 2009)); *see also Gieseke v. Bank of America, N.A.*, No. 13-cv-04772-JST, 2014 WL 718463, at *5 (N.D. Cal. Feb. 23, 2014) ("The law is well settled that FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt.") (citing *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010)) (internal quotations omitted). Furthermore, "the legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of the debt." *Wise*, 680 F. Supp. 2d at 1053 (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

Additionally, "[t]he FDCPA imposes liability only when an entity is attempting to collect debt." *Ho v. ReconTrust Co., N.A.*, 840 F.3d 618, 621 (9th Cir. 2016). "[T]he word 'debt' is synonymous with 'money,'" and so a debt collector is liable only "if it attempted to collect money from [the borrower]." *Id.* The purpose of a non-judicial foreclosure is not to collect money but instead "to retake and resell the security." *Id.* "Thus, actions taken to facilitate non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt'" under the FDCPA. *Id.*

Here, the Glasers allege that the defendants violated the FDCPA by failing to provide "the FDCPA Mini Miranda Warning and [the] FDCPA 30-day validation notice."[109] They assert that the defendants did not provide notice of their validation rights in their "correspondence or verbal communications regarding" California's notice-of-default requirements,[110] within the Notice of

---

[109] *Id.* ¶ 136.

[110] Cal. Civ. Code § 2923.55.

Default itself, "or otherwise."[111] Thus, the Glasers allege, the defendants "violated the FDCPA and clouded title to [their] property."[112]

But, as pled, none of the defendants is a "debt collector." First, the court dismisses the claim against MERS and U.S. Bank because there are no allegations concerning these defendants' communications with the Glasers. Neither MERS nor U.S. Bank recorded the Notice of Default or the section 2923.55 declaration.[113] And both of those defendants had transferred their interests in the loan long before NBS recorded the Notice of Default.[114] Second, Nationstar was the loan's servicer and thus falls outside the definition of a "debt collector." *See Pratap*, 63 F. Supp. 3d at 1113–14. Third, by recording the Notice of Default, NBS — the trustee — was facilitating the non-judicial foreclosure, was not attempting to "collect a debt," and so was not a "debt collector." *See Ho*, 840 F.3d at 622–25 (holding that a trustee enforcing facilitating a non-judicial foreclosure is not a "debt collector" under the FDCPA). Thus, as pled, none of the defendants is a "debt collector" under the FDCPA.

The court therefore dismisses the Glasers' FDCPA claim but grants leave to amend.

## 9. TILA Claims

The Glasers assert two TILA violations. First, they argue, the defendants failed to properly disclose "the pros and cons of adjustable rate mortgages."[115] Second, they allege that the defendants did not notify them when they acquired an interest in their loan.[116] The Glasers seek to rescind their loan and ask for damages as a result of these alleged TILA violations.[117]

---

[111] FAC ¶ 137.

[112] *Id.* ¶ 141.

[113] *See Id.* ¶ 136–37, Ex. I.

[114] FAC ¶¶ 13–15, Exs. B, D, E.

[115] *Id.* ¶ 146.

[116] *Id.* ¶ 147.

[117] *Id.* ¶¶ 152–55.

### 9.1 Rescission Claim

The Glasers "contend they have the right to rescind the loan on" their property.[118]

A borrower may rescind a loan under TILA within three business days "following the consummation of the transaction or the delivery of [TILA-required disclosures], whichever is later, by notifying the creditor . . . of his intention to do so." 15 U.S.C. § 1635(a); *Jesnoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). If the lender never provides the required disclosures, the borrower's right of rescission expires after three years. 15 U.S.C. § 1635(f); *Jesinoski*, 135 S. Ct. at 792. To exercise the right, the borrower need only give timely notice. *Jesinoski*, 135 S. Ct. at 792. But the notice must be timely, and the three-year period for a TILA rescission claim is not subject to equitable tolling. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).

Here, the Glasers took out their loan in December 2004, the date of consummation under TILA. 12 C.F.R. § 226.2(a)(13) (a loan is deemed "consummated" under TILA at "the time that a consumer becomes contractually obligated on a credit transaction"); *Lynch v. RKS Mortgage, Inc.*, 588 F. Supp. 2d 1254, 1261 (E.D. Cal. 2008). They assert that the defendants did not provide required information concerning their adjustable-rate mortgage.[119] Whether or not the defendants provided the required disclosures, the three-year period to rescind the loan has long passed. The court therefore dismisses the Glasers' rescission-based TILA claim with prejudice.

### 9.2 Damages Claim

The Glasers also request damages (actual and statutory) for the alleged TILA violations.[120] The court addresses the two alleged TILA violations in turn.

---

[118] *Id.* ¶ 152.

[119] *Id.* ¶ 146.

[120] *Id.* ¶¶ 147, 153–55.

### 9.2.1 Adjustable-rate mortgage disclosures

The Glasers allege that the defendants failed to disclose TILA-required information concerning their adjustable-rate mortgage.[121] There are two problems with this claim.

First, as pled, the claim is time-barred. The statute of limitations on TILA-damages claims is generally one year from the date of the violation. 15 U.S.C. § 1640(e). But "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA [damages] action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Such tolling is available only if "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001).

Here, as discussed above, the loan consummated in December 2004, the date of the defendants' alleged failure to disclosed information about the Glasers' loan. That is over twelve years ago. The Glasers assert vaguely that "[a]ny and all statute[s] of limitations relating to disclosures and notices . . . were tolled due to Defendants['] failure to effectively provide the required disclosures and notices."[122] That reasoning is circular and conclusory and does not adequately plead a case for equitable tolling.

Second, even if they could show equitable tolling, the Glasers do not plead a plausible claim. Their deed of trust contains an adjustable rate rider, each page of which the Glasers initialed (or signed).[123] This seven-page document contains information about the loan and the adjustable interest rate. In light of the rider, the Glasers' allegation that the defendants did not "fully inform [them] of the pros and cons of adjustable rate mortgages" is not plausible.

---

[121] *Id.* ¶ 146.

[122] *Id.* ¶ 150.

[123] *Id.* ¶ 11, Ex. A at 17–23.

United States District Court
Northern District of California

The court also notes that the Glasers' seemingly related allegations — that the defendants did not "advise them to compare similar loan products with other lenders" or "offer other loan products that might be more advantageous"[124] — are vague and conclusory. The court cannot tell if these allegations relate to the defendants' duty regarding the adjustable-rate disclosures or are intended to state separate TILA violations. They are also stated as apparent requirements, not necessarily the defendants' violations.

The court therefore dismisses the Glasers' damages claim based on the defendants' failure to disclose information about the adjustable interest rate (and the related allegations). The court grants them leave to amend the claim.

### 9.2.2  Assignment of interest disclosures

The Glasers also allege that the defendants violated TILA by failing to notify them when their loan was transferred.[125]

Section 1641(g) states that "[n]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." 15 U.S.C. § 1641(g)(1). "If the new creditor does not comply with this duty, Congress authorized the borrower to sue the creditor to recover actual damages[ or] a statutory penalty of up to $4,000 . . . , plus costs and attorney's fees." *Talaie v. Wells Fargo Bank, NA*, 808 F.3d 410, 411 (9th Cir. 2015) (citing 15 U.S.C. § 1640(a)).

The Glasers seek actual damages for the TILA violation. To state a claim for actual damages, a plaintiff must show that he or she suffered a loss by relying on an inaccurate or incomplete disclosure. *See Gold Country Lenders v. Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002). Detrimental reliance thus is a required element of a claim for actual damages. *See* 15 U.S.C. § 1640(a); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2011). TILA's legislative history clarifies that,

---

[124] *See* FAC ¶ 146.

[125] *Id.* ¶ 147.

although TILA provides for "statutory remedies on proof of a simple TILA violation," the statute requires a "more difficult showing of detrimental reliance to prevail on a claim for actual damages." *Turner*, 242 F.3d at 1028; *see* H.R. Rep. No. 104-193, pt. 1, at 95 (1995). Therefore, "a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages." *Turner*, 242 F.3d at 1028.

Here, the Glasers fail to adequately allege a claim for actual damages. They assert that "[a]s a direct and proximate result of Defendants' violations, [they] have incurred and continue to incur damages in an amount according to proof but not yet ascertained including . . . statutory damages and all amounts paid or to be paid in connection with the transaction."[126] But they do not allege how they detrimentally relied on any of the allegedly undisclosed assignments. And they do not plausibly demonstrate a causal link between the defendants' alleged nondisclosure and their alleged damages. The court therefore dismisses their actual-damages claim with leave to amend.

In any event, the court also dismisses with prejudice the TILA claim against MERS because it was the original beneficiary on the deed of trust and § 1641(g) applies only to creditors who are new owners or assignees of a mortgage loan. *See Nicosia v. Wells Fargo Bank*, No. C 10-0398 PJH, 2010 WL 4269279, at *2 (N.D. Cal. Oct. 25, 2010) ("As defendant notes, however, 15 U.S.C. § 1641(g) requires notice to be provided to the mortgagee by any 'new' owners or assignees of debt. Defendants are the original owners of the note, and so are not implicated by the statute.").

The court similarly dismisses the claim against Nationstar because it was the loan's servicer. "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1); *Marks v. Ocwen Loan Servicing*, No. C 07-02133 SI, 2008 WL 344210, at *2 (N.D. Cal. Feb. 6, 2008) ("Although TILA provides that assignees of a loan may be liable for TILA violations, loan servicers are not liable under TILA as assignees unless the loan servicer owned the loan obligation at some point."). And, a servicer

---

[126] *Id.* ¶ 153.

"shall not be treated as the owner of the obligation . . . on the basis of an assignment of the

obligation from the creditor or another assignee to the servicer solely for the administrative

convenience of the servicer in servicing the obligation." 15 U.S.C. § 1641(f)(2).

Here, Bank of America assigned "all beneficial interest under" the Glasers' deed of trust to

Nationstar.[127] But the assignment does not automatically make Nationstar an "owner" under

TILA. *See, e.g.*, *Leffridge v. Nationstar Mortg., LLC*, No. ED CV 14-01940 JAK (KKx), 2015 WL

12681307, at *4 (C.D. Cal. Nov. 19, 2015) (concluding, on summary judgment, that Nationstar

was a servicer and not an owner even where it received an assignment of the beneficial interest in

the deed of trust). The assignment instead appears to have assigned to Nationstar the rights to

service the loan; for example, it appears as "attorney in fact for U.S. Bank."[128] And the Glasers do

not allege that Nationstar was in fact an "owner," only that it was an "assignee."[129] Indeed, the

allegations in the complaint — such as Nationstar's role in the Glasers' payment and modification

efforts — most plausibly indicate that it was merely a servicer, not an owner. *See* 12 U.S.C.

§ 2605(i)(2)–(3) (defining a "servicer" as "the person responsible for servicing of a loan,"

meaning "receiving any scheduled periodic payments from a borrower pursuant to the terms of

any loan . . . and making the payments of principal and interest and such other payments with

respect to the amounts received from the borrower as may be required pursuant to the terms of the

loan.").

The court also dismisses the claim against NBS. In the FAC, the Glasers assert that

"[a]lthough NBS as trustee[] would not generally be subjected to TILA, under California law . . .

NBS is a party in privity to the PSA . . . and liable under the [PSA's] indemnification

provision."[130] They cite to general agency principles, the PSA's indemnification provision, and

*Heritage Oaks Partners v. First Am. Title Ins. Co.*, 155 Cal. App. 4th 339 (2007), to argue that

---

[127] FAC, Ex. E.

[128] FAC, Ex. H.

[129] *See* FAC ¶ 151.

[130] *Id.* ¶¶ 148–49 (citation omitted).

NBS is liable for the other defendants' TILA violations.[131] The court finds the argument unpersuasive. First, as discussed above, the Glasers do not have standing to enforce the PSA. *See Bergman v. Bank of Am., N.C.*, No. 13-cv-00741-JCS, 2014 WL 265577, at *4 (N.D. Cal. Jan. 22, 2014) (declining to address the plaintiffs' "poorly articulated claim" that "an indemnification agreement in the PSA . . . would inculpate Trustee Corps for breaches of the PSA including the faulty assignment which also violated TILA" because the plaintiffs lacked standing to enforce the PSA). Second, § 1641(g) applies only to "creditors," and the Glasers have not alleged that NBS is a creditor. *See id.* NBS is instead a trustee of the deed of trust and, as such, "has no beneficial interest in the mortgage" and has duties limited to foreclosing on the deed of trust or (if the debt is satisfied) conveying the deed of trust to the borrower. *Vogan v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 132944, at *9–*10 (E.D. Cal. Nov. 16, 2011) (citing *Heritage Oaks Partners*, 155 Cal. App. 4th 339). And, "[d]ue to the limited duties and lack of beneficial interest assigned to the trustee of a deed of trust, federal courts in California hold that TILA does not apply to the trustee of a deed of trust." *Id.* (citing *Guerrero v. Citi Residential Lending, Inc.*, No. CV F 08-1878 LJO GSA, 2009 WL 926973, at *4 (E.D. Cal. Apr. 3, 2009)).

Finally, U.S. Bank argues that § 1641(g) "only went into effect on May 19, 2009," it does not apply retroactively, and therefore does not apply to its "acquisition of an interest in the Loan" because the Glasers "allege the Loan was securitized to U.S. Bank in 2005."[132] U.S. Bank cites to *Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12cv2106-WGH-KSC, 2015 WL 3966119 (S.D. Cal. June 30, 2015). There, it was undisputed that "Plaintiff obtained the Loan on or about March 30, 2006, and Plaintiff's Loan was transferred into a securitized trust on or before May 31, 2006." *Id.* at *4. It was also undisputed that "Chase and BONY entered into an agreement whereby BONY became the trustee of the Trust" as of October 1, 2006. *Id.* "Plaintiff's loan was transferred well before Section 1641(g) went into effect," and so that section was inapplicable to BONY. *Id.*

---

[131] *Id.* ¶ 148.

[132] Motion to Dismiss – ECF No. 40 at 26.

1    Here, unlike *Diunugala*, the Glasers allege (and attach a recorded assignment showing) that

2    MERS did not transfer an interest to U.S. Bank until January 2011.[133] The PSA may have required

3    the transfer to occur by February 2005,[134] but the Glasers allege that did not happen until 2011

4    (post § 1641(g)'s effective date).[135] Their claim against U.S. Bank will therefore survive the

5    current motion.

6

7    **10. RESPA Claim**

8    The Glasers assert various violations of RESPA, including the defendants' (1) improper

9    assignments under the deed of trust; (2) failure to respond to the Glasers' qualified written

10   requests ("QWR"); and (3) failure to notify the Glasers of a change in the loan's servicer.[136] The

11   court addresses each in turn.

12

13   **10.1  Improper Assignments**

14   First, they assert that the defendants' assignments in violation of the PSA violate RESPA,

15   too.[137] The court denies this argument for the same reason as above: as pled, the Glasers do not

16   have standing to challenge those assignments.

17

18   **10.2  Failure to Respond to a Qualified Written Request**

19   Second, they assert that the defendants failed to "adequately respond to their qualified written

20   request."[138] RESPA provides that borrowers may inquire about federally related mortgages by

21   submitting a QWR. 12 U.S.C. § 2605(e)(1)(A). A QWR must describe why a borrower believes

22   her account is in error or provide sufficient detail to the servicer regarding other information

23

---

24   [133] FAC ¶¶ 13–14, Exs. B, D.

25   [134] FAC ¶¶ 29, 41.

26   [135] *See id* ¶ 41.

     [136] *Id.* ¶¶ 156–66.

27   [137] *See id.* ¶¶ 157–58.

28   [138] *Id.* ¶ 160.

United States District Court
Northern District of California

sought by the borrower. 15 U.S.C. § 2605(e)(1)(B). RESPA provides plaintiffs with a private right of action for, among other wrongful acts, a loan servicer's failure to respond in a specific manner to a QWR for information about the loan. 15 U.S.C. § 2605(f); *see Choudhuri v. Wells Fargo Bank, N.A.*, No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)). RESPA requires loan servicers to provide written responses to a QWR that seeks "information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1)(A). "That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that section 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan." *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009).

Here, the Glasers inadequately plead their QWR-based RESPA claim. They do not identify their QWR on which they base their claim, or how the defendants' response was insufficient. They also do not distinguish among the defendants; for example, do they allege that they sent a QWR to Nationstar? To U.S. Bank? To NBS? The FAC does not say. It is possible that their QWR claim is based on one (or more) of their communications with Nationstar, for example, surrounding their modification efforts. But, as pled, the court cannot tell and so it dismisses the claim but grants leave to amend.

### 10.3  Failure to Notify of a Transfer in Servicing Rights

Third, the Glasers assert that the defendants "or predecessors in interest failed to properly or timely inform [them] of a change in servicer to [Bank of America], Select Portfolio Servicing, or Nationstar."[139] *See Choudhuri*, 2011 WL 5079480 at *8 (RESPA includes a claim for "the failure by a loan servicer to give proper notice of a transfer of servicing rights").

The court dismisses this claim as to MERS, U.S. Bank, and NBS. The Glasers do not allege that these defendants are loan servicers and so they are not subject to RESPA. The Glasers do

---

[139] *Id.* ¶¶ 161–62.

allege that Nationstar serviced the loan. But because they generally group the allegations against the defendants, the court cannot be sure if this claim is directed at Nationstar.

The court thus dismisses the claim but grants leave to amend.

* * *

The court also notes the Glasers have not adequately pled RESPA damages. In order to avoid dismissal of a RESPA claim, the plaintiff must plead specific facts showing that he suffered "pecuniary damages." *Allen v. United Fin. Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009). Moreover any injury must be "a result of the failure" to comply with RESPA. 12 U.S.C. § 2605(f)(1)(A). A plaintiff has the obligation to "point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA." *Allen v. United Fin. Mortg. Corp.*, No. 09–2507 SC, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010); *see Lawther v. Onewest Bank*, No. C 10–0054 RS, 2010 WL 4936797, at *6 (N.D. Cal. Nov. 30, 2010). This pleading requirement limits RESPA claims to circumstances in which a plaintiff can allege specific facts to show causation — "actual damages to the borrower as a result of the failure [to comply with RESPA requirements]." *Lal*, 680 F. Supp. 2d at 1223; *see also Tamburri v. Suntrust Mortg., Inc.*, 875 F.Supp.2d 1009, 1014 (N.D. Cal. 2012). The plaintiff must allege a "concrete harm caused by the RESPA violation itself, not harm generally resulting from a plaintiff's default and foreclosure process." *Tamburri*, 875 F.Supp.2d at 1014.

Here, the Glasers allege that they "have suffered damages arising out of the numerous" RESPA violations, including "devastation of their reputation and credit rating, monetary damages, and the impending foreclosure of their home."[140] But they do not plead facts plausibly tying these damages to the defendants' alleged RESPA violations. For example, they do not allege how the defendants' alleged QWR-based and servicing-notification violations caused the alleged harms. If the Glasers choose to amend their RESPA claims, they must plead facts showing how the defendants' violations caused pecuniary damages.

---

[140] *Id.* ¶¶ 163–64.

**11. Claims Against Ms. Nguyen**

It is not clear what (if any) claims the Glasers assert against Ms. Nguyen. The only allegation about Ms. Nguyen is that U.S. Bank "attempted to transfer" its interest to her, but that Ms. Nguyen is "not legally a good faith purchaser due to the void Trustee's Deed Upon Sale."[141] This is plainly insufficient to maintain any of the above claims against Ms. Nguyen, and so the court dismisses all of them to the extent asserted against her.

## CONCLUSION

The court grants in part the defendants' motion to dismiss. As described above, the court grants the Glasers leave to amend the complaint within 14 days of this order.

**IT IS SO ORDERED.**

Dated: May 9, 2016

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[141] *Id.* ¶¶ 7, 27.